**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Lyndall Dwaine Thompson,

                     Petitioner,

v.

Charles L. Ryan, *et al.*,

                     Respondents.

No. CV-12-00766-TUC-DCB (BGM)

**REPORT AND RECOMMENDATION**

      Currently pending before the Court is Petitioner Lyndall Dwaine Thompson's *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Petition") (Doc. 1).  Respondents have filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 11).    Petitioner filed his Traverse (Doc. 13).  The Petition is ripe for adjudication.

      Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.  The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1).

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

The Arizona Superior Court, Pima County stated the facts[2] as follows:

The charges in the Petitioner's case stem from the following incident.  On June 29, 2007, the Petitioner and his brother Clark got into an argument which erupted into a fist fight.  The Petitioner was carrying two handguns a .45 and a 9mm when the fight began.  Before the fight ensued, the Petitioner removed the handguns from his person and tossed them aside or dropped them so that they could not be used during the fight.  Clark pinned the Petitioner to the ground during the fight and was getting the better of the Petitioner when the Petitioner managed to escape from beneath Clark and run inside his trailer home.  The Petitioner claimed that during the fight Clark repeatedly threatened to kill him and that after running inside, he feared that Clark now had access to the handguns which were still outside.  Based on these fears the Petitioner retrieved his SKS rifle and he went back outside carrying the rifle.   When the Petitioner emerged from the trailer with the SKS rifle he saw Clark nearby, walking in the other direction.  The Petitioner then chambered a round of ammunition in the rifle and as he did so, he claimed that Clark turned abruptly to confront him once again.  The Petitioner claimed that he could not see Clark's hands because his view was blocked by a nearby parked vehicle.   As Clark turned, he began approaching the Petitioner at a rapid pace.  The Petitioner claims that at that point he shot Clark several times, emptying the magazine of the SKS.  The Petitioner claimed he then threw down the rifle and ran back inside his trailer to retrieve his cellular phone before he fled on foot.

The Petitioner fled to a nearby intersection where he flagged down a passing driver.  The Petitioner called 911 and asked the driver to tell the 911 operator that he had just shot his brother.  Police arrived and took the Petitioner into custody.  Deputies Almarez and Sutton and Sergeant James arrived at the scene of the shooting and conducted a search for any victims.  The deputies cleared the Petitioner's trailer and though they found no victims there, they did find a malfunctioned 9mm handgun with a live round of ammunition "stovepiped" in the ejection part of the weapon.  The deputies then proceeded to clear the remainder of the property whereupon the discovered the Petitioner's brother lying shot to death on a path between

---

[2] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007); *Wainwright v. Witt*, 469, U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

the two trailer homes.  There were several spent shell casings and a spent shotgun shell lying nearby.  Deputy Sutton's report states that an SKS rifle and a .45 caliber handgun were found next to each other near the north side of the Petitioner's trailer home.  Later, when Deputy Sutton was interviewed by Defense Counsel he claimed that he did not actually discover the weapons and that he could not remember if they were found on the ground, but that he believed they were found by a uniformed officer atop the engine compartment of a vehicle parked on the property.  None of the reports from officers at the scene indicate whether the weapons were actually discovered atop the vehicle or whether they were placed there after being discovered on the ground.  At trial, Detective Copeland testified that the weapons were discovered on the engine compartment of the vehicle by uniformed officers who initially responded to the scene.  Detective Pruess also testified that the weapons were found on the vehicle.

Meanwhile, the Petitioner was read his *Miranda*[3] rights and transported to the Green Valley substation for questioning.  The Petitioner agreed to waive his right to remain silent based on the condition that the detectives answer any questions that he might have.  The Petitioner made it clear that he would terminate the interview if the detectives failed to answer any of his questions.  The detectives agreed to this arrangement.  Specifically, the following exchange took place:

| | |
|---|---|
| DETECTIVE COPELAND: | (Reading *Miranda* rights) Do you understand these rights? |
| PETITIONER: | I understand those rights and I'll act as my own attorney.  When I ask you a question, I'll need your answer or we'll stop the interview.  Fair is fair. |
| DETECTIVE COPELAND: | Okay.  So, so you're. |
| PETITIONER: | You can ask me anything you want, I'm my own lawyer.  I'll represent myself.  I'll ask you anything I want, if you stop answering questions for me, then I'll stop answering questions for you. |

---

[3 *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).]

DETECTIVE COPELAND:       Okay.

PETITIONER:               Fair is fair.

DETECTIVE COPELAND:       Fair is fair. [Footnote omitted]

During the interrogation, the Petitioner asked the detectives about his brother and the detectives led the Petitioner to believe that his brother was still alive and that one [of] the handguns he had discarded before the flight had been fired. The Petitioner made several incriminating statements which were used against him at trial. After the Petitioner was informed that his brother was dead, he terminated the interview and refused to answer any more questions.

Answer (Doc. 11), In Chambers Ruling, Re: Petition for Post-Conviction Relief 8/3/2010 (Exh. "E") at 1–3.

On July 10, 2007, a grand jury indicted the Petitioner on one count of first degree murder for the shooting death of his brother Clark Duval. *Id.*, Exh. "E" at 1; *see also* Answer (Doc. 11), Ct. App. Mem. Decision 9/24/2009 (Exh. "C") at ¶ 1. On April 11, 2008, a jury found Petitioner not-guilty of first degree murder, but found him guilty of the lesser-included offense of second degree murder, a class two felony. Answer (Doc. 11), Exh. "C" at ¶ 1, Exh. "E" at 1. On July 14, 2008, Petitioner was sentenced to the presumptive term of sixteen years imprisonment. *Id.*, Exh. "C" at ¶ 1, Exh. "E" at 1.

**A. Direct Appeal**

On March 2, 2009, counsel for Petitioner filed an *Anders*[4] brief with the Arizona Court of Appeals.[5] Answer (Doc. 11), Appellant's Opening Br. 3/2/2009 (Exh. "G").

---

[4] *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).

[5] The Arizona Court of Appeals has described the procedure of filing an *Anders* brief as follows:

Under our procedure, when appointed counsel determines that a defendant's case discloses no arguable issues for appeal, counsel files an *Anders* brief. The brief

Subsequently, Petitioner filed two *pro se* supplemental appellate briefs.  Answer (Doc. 11), Appellant's *Pro Se* Suppl. Br. 7/17/2009 (Exh. "I") & Appellant's *Pro Se* Suppl. Br. 7/8/2009 (Exh. "M").  Petitioner initially alleged six (6) claims for relief, including that (1) "because of the 'irreconcilable conflict and friction' between him and his attorney of record, the trial court abused its discretion in refusing to replace trial counsel[;]" (2) "because he was prevented from participating in an effective and amicable manner with his trial counsel, he was deprived of the opportunity and right to put forth mitigating factors into the record of testimony and complete and full disclosure[;]" (3) because of the conflict between Petitioner and counsel "request after request for interview and investigation concerning family, friends, associates and witnesses went entirely unheeded or considered[,]" preventing Petitioner for establishing mitigating factors and "conditions of historical background and motives of conduct[;]" (4) prosecutorial misconduct by the State "because it engaged in presenting facts and various misstatements about Appellant during the trial and sentencing that were prejudicial[;]" (5) "all officers of the honorable court did not participate in or take action to insure or represent a profound attitude of

_____

contains a detailed factual and procedural history of the case, with citations to the record. *See Scott,* 187 Ariz. at 478 n. 4, 930 P.2d at 555 n. 4. Counsel submits the brief to the court and the defendant. The defendant is then given the opportunity to file a brief *pro per.* After receiving all briefing, the court reviews the entire record for reversible error. If any arguable issue presents itself, the court directs appointed counsel to brief the issue. Only after the court has ascertained that counsel has conscientiously performed his or her duty to review the record, and has itself reviewed the record for reversible error and found none, will the court allow counsel to withdraw. *See State v. Shattuck,* 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). We conclude that this procedure permits counsel to perform ethically, while simultaneously ensuring that an indigent defendant's constitutional rights to due process, equal protection, and effective assistance of counsel are protected.

*State v. Clark*, 196 Ariz. 530, 537, 2 P.3d 89, 96 (Ct. App. 1999).

fairness[;]" and (6) based on the conflict between Petitioner and counsel "he was not given proper nor full and complete full disclosure of evidence[.]"  Answer (Doc. 11), Exh. "M" at 2–3.  The majority of Petitioner's first supplemental brief focused on the trial court's alleged failure to replace his attorney despite the "irreconcilable conflict" between them.  *See id.*, Exh. "M."  Petitioner's second supplemental brief alleged that (1) "the trial court abused its discretion by not allowing attorney [sic] and Public Defender's Office [sic] to withdraw wholly and completely and the court's failure to acknowledge a gross conflict of interest and denial, summarily, of the Appellant's due process[;]" (2) Petitioner was "denied his right to pre-trial and hearing that would put forth mitigating factors and circumstances reflecting his nature and associations surrounding all trial issues and alleged events . . . [including] knowledge of a right to preliminary hearings, to include mitigation hearings and hearing of discovery[;]" and (3) the "denial of due process did not allow [Petitioner] to present mitigating testimony for the record nor for the jury's review."  *Id.*, Exh. "I" at 3–4.  The majority of Petitioner's second supplemental brief focused on the alleged denial of a preliminary hearing.  *See id.*, Exh. "I."

On September 24, 2009, the Arizona Court of Appeals affirmed Petitioner's convictions.  *See* Answer (Doc. 11), Ariz. Ct. App. Mem. Decision 9/24/2009 (Exh. "C").  As an initial matter the appellate court "note[d] that most of the arguments Thompson has attempted to assert in his first supplemental brief appear to have been copied from the pleadings of other defendants."  *Id.*, Exh. "C" at 3.  The court went on to state that "[a]s such, they are generally unclear and unsupported by the record on appeal."  *Id.*  "To the

extent Thompson intended to challenge Skitzki's conduct at trial, his arguments constitute claims of ineffective assistance of counsel," which the Arizona Court of Appeals recognized must be brought in a post-conviction relief proceeding pursuant to Rule 32, Arizona Rules of Criminal Procedure, and that it therefore could not consider on appeal. *Id.*, Exh. "C" at 4.  The court further "reject[ed] Thompson's argument that his due process rights were violated because he was charged by indictment following a grand jury proceeding rather than by information following a preliminary hearing." *Id.*, Exh. "C" at 5.  In assessing this claim, the court of appeals recognized that "[i]n Arizona, a defendant may be charged by indictment, issued by a grand jury upon its finding that probable cause exists to believe the defendant committed the alleged offense, or by information, filed after a finding of probable cause is made by the court."  Answer (Doc. 11), Exh. "C" at 5 (citing Ariz. Const. art. II, § 30; Ariz. R. Crim. P. 5.1, 13.1(c)).  "The use of either procedure satisfies the requirements of due process."  *Id.*, Exh. "C" at 5 (citing *State v. Neese*, 126 Ariz. 499, 502–03, 616 P.2d 959, 962–63 (Ct. App. 1980)).

Petitioner did not seek review of this decision with the Arizona Supreme Court. Petition (Doc. 1) at 4.

### B.  *Initial Post-Conviction Relief Proceeding*

On October 2, 2009, Petitioner filed his Notice of Intent to File for Post-Conviction Relief ("PCR").  Answer (Doc. 11), Not. of Intent to File for PCR 10/2/2009 (Exh. "D").  On April 14, 2010, Petitioner filed his Petition for Post Conviction Relief. Answer (Doc. 11), Pet. for PCR (Exh. "L").  Petitioner claimed that his trial counsel was ineffective for failing "to file a motion to suppress the Defendant's statement based on it

having been unconstitutionally obtained." *Id.*, Exh. "L" at 12.   In furtherance of this argument, Petitioner alleged that he "agreed to answer questions only if the detectives promised to answer his questions" and that "but for the detective's [sic] promise that the interview would proceed on a *quid pro quo* basis, the Defendant would have exercised his 5th Amendment right to remain silent." *Id.*, Exh. "L" at 13–14.   Petitioner further argued that the detectives "breach" of their agreement, invalidated Petitioner's *Miranda*[6] waiver. *Id.*, Exh. "L" at 20.   Petitioner claimed that based upon the detectives' alleged "breach," counsel's "failure to file a motion to suppress Defendant's statement constitutes deficient performance[.]" *Id.*, Exh. "L" at 15.   Petitioner also claimed ineffective assistance of counsel, because trial counsel failed "to request additional disclosure to determine who actually located the weapons and the specific location where the weapons were found." Answer (Doc. 11), Exh. "L" at 23.   Petitioner asserted that "[a]bsent disclosure of that information, counsel should have moved in limine to prevent the State from soliciting testimony that the weapons were found on the vehicle[.]" *Id.*   Finally, Petitioner argued that trial counsel was ineffective for failing to create a record specifying which portions of Defendant's statement were redacted from the transcripts and compact discs that were "provided to the jury." *Id.*, Exh. "L" at 24–25.

On August 3, 2010, the trial court denied Petitioner's post-conviction relief ("PCR") petition. *See* Answer (Doc. 11), Exh. "E."   The trial court stated that "[i]n order for a petitioner to raise a colorable ineffective assistance of counsel claim, he must show that counsel's performance fell below objectively reasonable standards, and that this poor

---

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

performance prejudiced him."  *Id.* at 4 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985); *State v. Jackson*, 209 Ariz. 13, 14, 97 P.3d 113, 114 (2005)).  In considering whether trial counsel was ineffective for failing to file a motion to suppress Petitioner's allegedly unconstitutionally obtained statements, the trial court first addressed the voluntariness of Petitioner's statement.  Answer (Doc. 11), Exh. "E" at 5–6.  The trial court noted that the record showed "that the Petitioner conditioned his willingness to answer the detective's [sic] questions on their assent to answer any questions he might have of them and the detectives agreed to this arrangement."  *Id.*, Exh. "E" at 6.  The trial court further noted that "the record also reveals that it was Petitioner who solicited this arrangement with the police."  *Id*.  As such, the trial court found that the police did not promise a "benefit or leniency that would render the Petitioner's statement involuntary."  *Id.*  The trial court further found that trial counsel's "failure to seek suppression of the Petitioner's statements was a matter of trial strategy" and that trial counsel's actions were reasonable. *Id.*

The trial court analyzed Petitioner's claim of ineffective assistance of counsel due to an alleged failure "to seek additional disclosure regarding the weapons evidence and failed to preclude testimony as to the exact location of the discovery of the weapons." Answer (Doc. 11), Exh. "E" at 7.  The trial court delineated counsel's duty as follows:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.*, Exh. "E" at 7 (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)) (alterations in original).  Upon review of the record and the pleadings, the trial court found that all witnesses "consistently claimed and testified that the weapons were discovered atop the car."  Answer (Doc. 11), Exh. "E" at 8.  As such, the trial court found counsel's decision not to seek suppression was reasonable and a matter of trial strategy.  Alternatively, the trial court noted that "even if Trial Counsel's actions were unreasonable, the Petitioner ha[d] failed to demonstrate any prejudice[,] and [his] claim that the weapons testimony affected the outcome of his case [was] speculative."  *Id.*

Regarding trial counsel's alleged ineffectiveness for failing to make a record regarding the redaction of Petitioner's derogatory statements about illegal aliens, the trial court stated that "[t]here is no Arizona authority to support the proposition that a hearing cannot be waived and the matter submitted by stipulation of counsel[.]"  Answer (Doc. 11), Exh. "E" at 8 (quoting *State v. Contreras*, 112 Ariz. 358, 359, 542 P.2d 17, 18 (1975)).  Furthermore, "in Arizona, courts encourage stipulations 'to narrow the facts and promote judicial economy.'"  *Id.*, Exh. "E" at 8 (quoting *State v. Allen*, 223 Ariz. 125, ¶ 11, 220 P.3d 245, 247 (2009).  The trial court determined that even if trial counsel's actions were unreasonable, "Petitioner has failed to demonstrate any prejudice and his claims are speculative."  *Id.*, Exh. "E" at 9.  As such, the trial court denied relief.

On August 16, 2010, Petitioner filed his Petition for Review to Arizona Court of appeals.  *See* Pet. for Review to Ariz. Ct. App. 8/16/2010 (Doc. 1-4) at 11.  On February 8, 2011, the Arizona Court of Appeals granted review, but denied relief.  Ariz. Ct. App. Mem. Decision 2/8/2011 (Doc. 1-4) at 33.  The court of appeals considered Petitioner's

claims of ineffective assistance of counsel due to (1) an alleged failure to move to suppress Thompson's statements to police as involuntary, and (2) an alleged failure to move for additional disclosure regarding who had located the weapons and where they had been found.  *Id.* at 34.  The court of appeals further noted that "Thompson also claimed in his petition below that the 'redaction of [his] statement was improper under the circumstances.'  He does not mention this argument on review and we therefore do not address it."  *Id.* at 34 n. 1.  The court of appeals stated that "[i]n the context of an ineffective assistance of counsel claim like the one before us, . . . a petitioner bears the burden to show counsel's deficient performance prejudiced him—'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  *Id.* at 36 (quoting *Strickland*, 466 U.S. at 687).  The court of appeals went on to "agree with the trial court that Thompson ha[d] not met that standard."  *Id.*  Moreover the court of appeals also found that the trial court "correctly rejected Thompson's other claims in a thorough and well-reasoned minute entry."  *Id.*  As such it saw "no purpose in repeating or embellishing the court's rulings on those claims . . ., and therefore adopt[ed] them."  *Id.* (citing *State v. Whipple*, 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (Ct. App. 1993)).

On March 4, 2011, Petitioner sought review of the denial of his PCR petition by the Arizona Supreme Court.  Pet. for Review to Ariz. Supreme Ct. 3/4/2011 (Doc. 1-4) at 38.  On June 8, 2011, the Arizona Supreme Court denied review.  Ariz. Supreme Ct. ME 6/8/2011 (Doc. 1-4) at 54.

### C.  Second Post-Conviction Relief Proceeding

On October 27, 2011, Petitioner filed his Notice of Post-Conviction Relief.  Not.

- 11 -

of PCR 10/27/2011 (Doc. 1-4 at 60).   Based upon newly discovered evidence, a significant change in the law, actual innocence, and that his failure to file a timely PCR notice was not his fault, Petitioner claimed (1) a *Brady* violation based upon the State's alleged failure to disclose a complete transcript of Petitioner's own statement to police; (2) the State's alleged failure to disclose evidence "led directly to Extrinsic Collateral Fraud" in violation of his due process rights; (3) false evidence was used to obtain a conviction against him, as a result of the allegedly shortened version of the transcript of his police interview relied on by the State; (4) state court errors denied Petitioner a fair trial; (5) spoliation of evidence due to the alleged alteration of Petitioner's interview transcript; (6) fraudulent concealment based upon the State's alleged failure to disclose the complete transcript of Petitioner's interview; (7) a fundamental miscarriage of justice based upon the alleged alteration of the transcript of Petitioner's statement to police; and (8) that the jury instructions were inconsistent with S.B. 1449.   Notice of PCR 10/27/2011 (Doc. 1-4) at 60–87.

On January 6, 2012, the trial court denied Petitioner second PCR petition.   In Chambers Ruling, Re: Pet. for PCR 1/6/2012 (Doc. 1-5) 23–26.   The trial court analyzed Petitioner's claims regarding alleged inconsistencies in the transcripts of his police interview under the standard of newly discovered evidence.   *Id.* at 23.   The trial court observed that "Petitioner's argument is severely flawed[,]" noting that "Exhibit is A is in fact the Pima County Public Defender's transcription of Thompson's interview with police created on July 3, 2007[,] [which] was created, maintained, and possessed by Petitioner and his counsel since July 3, 2007."   *Id.*   The trial court further noted that

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Exhibit B is in fact the Pima County Attorney's transcription of the same interview, but was created on July 7, 2007 . . . [and] not within the sole possession of the State and . . . available to Petitioner at the time of trial." *Id.* The Court found that "only the CD audio recording of the interview was admitted, not the transcript[,] [and] [t]he CD contains the accurate and unredacted statements made by Petitioner without the concern of conflicting transcripts." *Id.* at 23–24. The trial court analyzed Petitioner's claim regarding allegedly improper jury instructions as one for ineffective assistance of counsel. In Chambers Ruling, Re: Pet. for PCR 1/6/2012 (Doc. 1-5) at 25. The trial court found that "Petitioner ha[d] failed to identify the statute at issue which would require the alternate jury instruction[,] that a review of SB 1449 was unhelpful, and that in light of Petitioner's admission to shooting the victim in this case, "[a] jury instruction defining assault as being without physical contact is irrelevant[.]" *Id.*

On February 6, 2012, Petitioner filed a Petition for Review (Doc. 1-5) at 40–73. *See also* Answer (Doc. 11), Pet. for Review 2/6/2012 (Exh. "N"). Subsequently, on February 10, 2012, Petitioner filed a Notice of Filing Petition for Review. (Doc. 1-5) at 28. On May 30, 2012, the Arizona Court of Appeals granted review, but denied relief. *See* Ariz. Ct. App. Mem. Decision (Doc. 1-5) at 76–80. Regarding the transcripts of Petitioner's police interview, the court of appeals found that "only the audio recording of the statements was played for the jury; the redacted version of the state's transcript was used during testimony[,] but was not admitted into evidence." *Id.* at 78. The appellate court further found that "the transcript Thompson claimed the state had failed to disclose to him was actually the transcript prepared by the Public Defender's office, exhibit A to

- 13 -

Thompson's petition."  *Id.*  Additionally, any redaction had occurred due to Petitioner's desire not to have the jury "hear anything about his having individuals suspected of being undocumented immigrants at gunpoint on his property."  *Id.*  Ultimately, both transcripts were marked as exhibits during trial, but not admitted.  *Id.* at 78–79.  The court of appeals found that Petitioner had "failed to establish the [trial] court abused its discretion when it summarily dismissed his notice/petition."  Ariz. Ct. App. Mem. Decision (Doc. 1-5) at 79.  The appellate court also found that the trial court properly addressed the timeliness of the State's response to Petitioner's second PCR petition.  *Id.*  As such, the Arizona Court of Appeals found that "[i]n all other respects, in its well-reasoned minute entry the trial court clearly identified and correctly resolved the claims Thompson had raised . . . [and] we adopt that ruling."  *Id.* at 79–80.

On September 13, 2012, the Arizona Supreme Court denied review.   Answer (Doc. 11), Ariz. Supreme Ct. ME 9/13/2012 (Exh. "K").

### D. The Instant Habeas Proceeding

On October 18, 2012, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1). Petitioner claims eight (8) grounds for relief, with some issues including multiple subparts.  First, Petitioner alleges ineffective assistance of trial counsel due to an alleged failure "to move to suppress petitioners [sic] unconstitutionally obtained statement this violated petitioners [sic] Right to Counsel and Right to Due Process of the Law[.]" Petition (Doc. 1) at 6.  Petitioner further alleges that the trial court erred in not finding his statement to police to be coerced.  *Id.*  Second, Petitioner alleges ineffective assistance of

trial counsel based on an alleged "fail[ure] to move for additional disclosure as to who found the SKS & .45 cal. weapons this precluded testimony as to the exact location of discovery of weapons." *Id.* at 7. Petitioner further alleges that counsel "failed to conduct reasonable pre-trial investigation" in violation of his right to counsel and due process. *Id.* Third, Petitioner claims that "[t]he State failed to disclose 'Brady" evidence (23) pages of Mr. Thompson's statement in possession of Pima County Sheriff's Office and investigative agencies which the State had access to . . . in violat[ion] [of] petitioners [sic] right to Due Process of the Law[.]" *Id.* at 8. Fourth, Petitioner asserts that "[t]he State failed to disclose evidence favorable to the accused as defense requested disclosure under Rule 15.1 & 15.1(b) . . . [in violation of] the petitioner's Rights to Due Process of the Law[.]" Petition (Doc. 1) at 9. Fifth, Petitioner alleges that "[f]alse evidence [was] used to convict . . . [in violation of] petitioners [sic] right to a fair trial, [and] rights to due process of the law." *Id.* at 10. As with Grounds Three and Four, this relates to the redacted transcription relied on by the State during trial. *See id.* at 8–10. Sixth, Petitioner claims that "State Court Errors Denied Defendant a Fair Trial as defendants [sic] conviction resulted from state court errors[.]" *Id.* at 11. This ground for relief includes "supporting facts" which appear to be either ways in which the trial court erred or possibly additional claims. *See id.* These include: (a) 18 U.S.C. §§ 1001, 1021 & 1622; (b) 18 U.S.C. § 1506; (c) Rules of Evidence 1002 & 106;[7] (d) Federal Rules of Criminal Procedure 26.2(f)(2); (e) twenty-three (23) "pages of the July 8, 2007

---

[7] Petitioner does not indicate whether he is referring to the Federal Rules of Evidence or the Arizona Rules of Evidence, but comments that he is referring to the "[r]equirement of the original[.]" Petition (Doc. 1) at 11.

[transcript] required to be released the same time the [ninety-four] (94) pages were released[;]" (f) "the Court was supposed to do the redaction and seal the entire statement[;]" (g) "any part of the statement should be considered contemporaneously with it[;]" (h) "139, 140 & 141 was never as of yet released to petitioner[;]" (i) spoliation "because it was harmful to prosecution's case[;]" (j) "Petitioner meets all (5) criteria of fraudulent concealment[;]" and (k) a reference to pages 9–18 of Petitioner's October 27, 2011 PCR petition.  Petition (Doc. 1) at 11.  Seventh, Petitioner alleges that "[t]he State denied the defense the right to reciprocal discovery . . . [in violation of] the petitioners [sic] rights to due process of the law[.]"  *Id.* at 12.  This again relates to the differing transcriptions of Petitioner's statements to police.  *See id.*  Eighth, Petitioner alleges "[o]utside influences upon the jury raise the presumption of prejudice that imposes a heavy burden on the State to overcome by showing that these influences were harmless to the petitioner."  *Id.* at 13.  Petitioner is referring to the redacted transcript relied on by the State during his trial and provided to the jury during its case in chief.  *See id.*  On January 22, 2013, Respondents filed their Answer (Doc. 11), and on February 7, 2013, Petitioner filed his Traverse (Doc. 13).

## II.   STANDARD OF REVIEW

### A.  *In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United*

*States*."  28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus

by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the claim – (1)
> resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398, 179

L.Ed.2d 557 (2011).  Correcting errors of state law is not the province of federal habeas

corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385

(1991).  Ultimately, "[t]he statute's design is to 'further the principles of comity, finality,

and federalism.'"  *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct. 2842, 2854, 168

L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029,

154 L.Ed.2d 931 (2003)).  Furthermore, this standard is difficult to meet and highly

deferential "for evaluating state-court rulings, [and] which demands that state-court

decisions be given the benefit of the doubt."  *Pinholster*, 131 S.Ct. at 1398 (citations and

internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat.

1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  The

"AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims

have been adjudicated in state court."  *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187

L.Ed.2d 348 (2013).  Federal courts reviewing a petition for habeas corpus must

"presume the correctness of state courts' factual findings unless applicants rebut this

presumption with 'clear and convincing evidence.'"  *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect.  *Id.*, 550 U.S. at 473, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013).  Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result.  *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt*, 134 S.Ct. at 10 (quoting *Harrington*, 562 U.S. at 103, 131 S.Ct. at 786–87) (alterations in original).

## B. Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A).  This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court."  *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).   As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct.

1347, 1349, 158 L.Ed. 2d 64 (2004) (internal quotations omitted).  Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal citations omitted).  This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure the question presented."  28 U.S.C. § 2254(c).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).  The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because

petitioner presented claim in state court only on state grounds).  Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349.  "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies."  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).   Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### C.  Procedural Default

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."  *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 650 (1991).  Moreover, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent

of the federal question and adequate to support the judgment." *Id.*, 501 U.S. at 728, 111 S.Ct. at 2254. This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted). Such claims are considered procedurally barred from review. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Ninth Circuit Court of Appeals explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted). Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default. *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005). Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where the petitioner presented his claims to the state court, which denied relief based on independent and adequate state grounds. *Coleman*, 501 U.S. at 728, 111 S.Ct. at 2254. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the

judgment and would therefore be advisory." *Id.* Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted). Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998)) (emphasis in original).

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims."). In addition to cause, a habeas petitioner

must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S.Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982)). "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)). Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404, 113 S.Ct. at 862. Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(3).  "if an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim."  *Id.*, 2002 cmt.  Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver.  *See id.*; *see also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002).  The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations."  *Cassett*, 406 F.3d at 622.

## III.    STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation.  *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).  The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2). Respondents do not dispute the timeliness of Thompson's petition.   The Court has independently reviewed the record and finds that the Petition (Doc. 1) is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).


IV.    ANALYSIS

   *A.  Grounds One and Two:  Ineffective Assistance of Counsel*

      For cases which have been fairly presented to the State court, the Supreme Court elucidated a two part test for determining whether a defendant could prevail on a claim of ineffective assistance of counsel sufficient to overturn his conviction.  *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, Petitioner must show that counsel's performance was deficient.  *Id.* at 687, 104 S.Ct. at 2064.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  Second, Petitioner must show that this performance prejudiced his defense.  *Id.*  Prejudice "requires showing

that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* Ultimately, whether or not counsel's performance was effective hinges on its reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *see also State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989) (adopting *Strickland* two-part test for ineffective assistance of counsel claims). The Sixth Amendment's guarantee of effective assistance is not meant to "improve the quality of legal representation," rather it is to ensure the fairness of trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (quoting *Strickland*, 466 at 686) (emphasis and alteration in original).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.]" *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (citations omitted). Judging counsel's performance must be made without the influence of hindsight. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Without the requisite showing of either "deficient performance" or "sufficient prejudice," Petitioner cannot prevail on his ineffectiveness claim. *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071. "[T]he question is not whether

counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Gentry v. Sinclair*, 705 F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788) (alterations in original).  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Harrington*, 562 U.S. at 104, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).  In the instant case, the Rule 32 court properly stated the *Strickland* rule, and this ruling was adopted by the Arizona Court of Appeals.  In Chambers Ruling, Re: Pet. for PCR 8/4/2010 (Doc. 1-4) at 4; Ariz. Ct. App. Mem. Decision 2/8/2011 (Doc. 1-4) at 36; *see also* Answer (Doc. 11), Exh. "E."  Accordingly, this Court must determine whether the State courts' conclusions were an unreasonable application thereof.  28 U.S.C. § 2254(d).

### 1.  **Ground One: Failure to move to suppress Petitioner's statements**

Petitioner claims that his "[t]rial counsel was ineffective for failing to move to suppress petitioners [sic] unconstitutionally obtained statement . . . [in violation of his] Right to Counsel and Rights to Due Process of the Law[.]"  Petition (Doc. 1) at 6. Petitioner asserts that "[t]he trial court erred in finding the petitioners [sic] statement not to have been coersed [sic] to the extent that it induced the petitioner to waive his "Miranda Rights" because it was petitioner who solicited the agreement with police for Quid pro Quo exchange for information [.]"  *Id.*  The Rule 32 court stated that "[t]he admissibility of a defendant's custodial statements is conditioned on warning the defendant of his *Miranda* rights, and obtaining the defendant's voluntary and intelligent

waiver of those rights before any interrogation takes place."  In Chambers Ruling, Re: Pet. for PCR 8/4/2010 (Doc. 1-4) at 5 (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Missouri v. Seibert*, 542 U.S. 600, 608 (2004)).  The court went onto determine the voluntariness of Petitioner's confession, relying on Arizona state law.  In Chambers Ruling, Re: Pet. for PCR 8/4/2010 (Doc. 1-4) at 6.  Upon finding Petitioner's statement to be voluntary, the Rule 32 court held that "Trial Counsel's failure to seek suppression of the Petitioner's statements was a matter of trial strategy and it does not find that Counsel's actions were unreasonable."  *Id.*  The Rule 32 court further found that even if a *Miranda* violation had occurred, that "there was an abundance of evidence adduced at trial [other than Petitioner's statements] from which the jury might have concluded that the Petitioner was guilty[,]" and as such he could not show prejudice.  *Id.* at 6–7.  The Rule 32 court's decision was adopted in total by the Arizona Court of Appeals.  Ariz. Ct. App. Mem. Decision 2/8/2011 (Doc. 1-4) at 36.  This Court is "not required to defer to the state court's decision because the issue involves an alleged violation of the federal Constitution."  *Brown v. Anderson*, 164 F.3d 629 (9th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).  As such, the Court will consider Petitioner's alleged *Miranda* violation.

### a.  *Miranda* **Waiver**

"In *Miranda v. Arizona*, the Court recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'"  *Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410

(1985) (quoting *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624).   As such, in order "[t]o combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused[,]"   which include the familiar *Miranda* warnings.   *Burbine*, 475 U.S. at 420, 106 S.Ct. at 1140.   "*Miranda* holds that '[t]he defendant may waive effectuation' of the rights conveyed in the warnings provided the waiver is made voluntarily, knowingly and intelligently.'"   *Id.*, 475 U.S. at 421, 106 S.Ct. at 1140–41 (quoting *Miranda*, 384 U.S. at 444, 475, 86 S.Ct. at 1612, 1628).   "The waiver inquiry 'has two distinct dimensions'"   waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"   *Berghuis v. Thompkins*, 560 U.S. 370, 382, 130 S.Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010) (quoting *Burbine*, 475 U.S. at 421, 106 S.Ct. 1135).   "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived."   *Burbine*, 475 U.S. at 421, 106 S.Ct. at 1141.

Here, it is undisputed that Petitioner was given *Miranda* warnings prior to any discussion with police officers.   Petitioner alleges, however, that he "did not just simply waive his 'Miranda Rights' but obviously by the record request with the waiver to act as his own attorney or other word's [sic] put in the position where police are not allowed to lie or create gamesmanship." Petition (Doc. 1) at 7.   At the beginning of the taped portion

of the interview, Detective Copeland read Petitioner his *Miranda* rights.  Petition (Doc. 1), Thompson Interview (Exh. "A") at 2.  As found by the Rule 32 court, Detective Copeland asked if Petitioner understood these rights, and the following exchange took place:

| | |
|---|---|
| THOMPSON: | I understand those rights and I will act as my own attorney when I as you a question and you just answered it was documented.  There I said it. |
| DET. COPELAND: | Okay.  So, so you're . . . |
| THOMPSON: | You can ask me anything you want, I am my own lawyer, I'll represent myself, I ask you anything I want, if you stop answering questions for me then I'll stop answering questions for you. |
| COPELAND: | Okay. |

Petition (Doc. 1), Exh. "A" at 2:3-22; *see also* Answer (Doc. 11), Exh. "E" at 1–3. Detective Copeland begins questioning Petitioner about where he lives, where he receives mail, and his telephone number.  Petition (Doc. 1), Exh. "A" at 3.  Petitioner asked about the status of his residence and dog, and Detective Copeland stated the information that he had.  *Id.*  Then Petitioner began discussing his brother, including the particulars of their familial relationship, his name, his residence.  *Id.*, Exh. "A" at 3–6.  The interview then returned to Petitioner's job status and more about his property.  *Id.*, Exh. "A" at 7–9. Petitioner complained of being cold, and asked for cigarettes.  *Id.*, Exh. "A" at 6:13-38, 9:36-10:2.  Before Petitioner began providing any information regarding the incident with his brother, the following occurred:

| | |
|---|---|
| HESS:[8] | I've got to interrupt really quick and I'm sorry.  I just want you to know Lyndall that just because we're getting you a shirt and some cigarettes, there's no promise, if you don't want to talk and you want to stop. . . . |
| THOMPSON: | I want to talk. |
| HESS: | You do? |
| THOMPSON: | I don't have any problem with this.  I didn't do anything wrong, I haven't done anything right, but I defended myself with lethal force. |
| HESS: | I just want you to understand that we're not here to go do talk so we're gonna give you something to warm up and we're going to give a cigarette. |
| THOMPSON: | _____ (12:45) see what you guys are up to, you can see what I'm up to. |
| HESS: | Okay, we're not up to anything, we want to know, if you want to talk, talk, but I, I'm not making you any promises. |
| THOMPSON: | I do want to talk. |
| HESS: | Okay. |
| THOMPSON: | I don't need any promises. |
| HESS: | Okay, very well. |
| THOMPSON: | I understand the law completely. |
| HESS: | Okay, good. |

Petition (Doc. 1), Exh. "A" at 11:15-12:5.  The record supports the state court's finding

that no *quid pro quo* promise related to Petitioner's waiver existed.  The totality of the

---

[8] This individual is identified as "Q2" on the transcript, and the heading refers to "Detectives Copeland & Hess."  Petition (Doc. 1), Exh. "A" at 1.  "Q" identified himself as Detective Copeland on the tape.  *See id.*  "Q2" is identified as Detective Hess on the State's transcript.  *See* Petition (Doc. 1), Exh. "B" at 1.

circumstances demonstrates "both an uncoerced choice and the requisite level of comprehension" that Petitioner voluntarily, knowingly, and intelligently waived his *Miranda* rights in speaking with Detectives Copeland and Hess. *Burbine*, 475 U.S. at 421, 106 S.Ct. at 1141. Petitioner "did not invoke his right to remain silent and stop the questioning[;] [and] [u]nderstanding his rights in full, he waived his right to remain silent by making a voluntary statement to the police." *Berghuis*, 560 U.S. at 389, 130 S.Ct. at 2264.

### b.  *Strickland* Error

"[T]he failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel[.]" *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986). Moreover, "[c]ounsel's competence . . . is presumed, . . . and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Id.* at 384, 106 S.Ct. at 2588 (citations omitted). The Rule 32 court held that "Trial Counsel's failure to seek suppression of the Petitioner's statements was a matter of trial strategy and it does not find that Counsel's actions were unreasonable." In Chambers Ruling, Re: Pet. for PCR 8/4/2010 (Doc. 1-4) at 6. This decision was adopted in total by the Arizona Court of Appeals. Ariz. Ct. App. Mem. Decision 2/8/2011 (Doc. 1-4) at 36. In light of Petitioner's clear and unequivocal waiver of his *Miranda* rights, this Court finds that the Arizona courts did not unreasonably apply clearly established Federal law or unreasonably determine the facts in light of the evidence presented. Therefore, Petitioner cannot meet his burden to show

"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104, 131 S.Ct. at 787 (quotations omitted).  As such, Petitioner cannot show either deficient performance or prejudice, and Petitioner's ineffective assistance of counsel claim regarding counsel's alleged failure to move to suppress Petitioner's statements must fail. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

## 2.  Ground Two: Discovery Regarding Weapons

Petitioner claims that his trial counsel was ineffective for failing "to move for additional disclosure as to who found the SKS & .45 cal[iber] weapons [because] this precluded testimony as to the exact location of discovery of weapons."  Petition (Doc. 1) at 7.  Petitioner further alleges that "counsel failed to conduct reasonable pre-trial investigation . . . [in violation of his] Right to Counsel and Rights to Due Process of the Law[.]"  *Id.*  Petitioner additionally claims that he "has discovered after receipt of his entire case file Sgt. James actually found [the guns.]"  *Id.*

The Rule 32 court stated that:

The Court has reviewed the record and the pleadings and finds that Deputy Sutton's statements in his report and his interview were consistent.  The Deputy never claimed to have discovered the weapons and maintained that he believed they were discovered atop the car and not on the ground though he couldn't remember with absolute certainty.  Nonetheless, the other witnesses consistently claimed and testified that the weapons were discovered atop the car.  For these reasons, the Court presumes that Trial Counsel elected not to explore the matter further and decided not to seek suppression of the witness testimony regarding the the [sic] location of the weapons as a matter of trial strategy.  The Court finds that Trial Counsel's actions were reasonable and it will not second-guess Trial Counsel's tactical decisions.  Moreover, even if Trial Counsel's actions were unreasonable, the Petitioner has failed to demonstrate any prejudice.  The

> Petitioner's claim that the weapons testimony affected the outcome of his case is speculative. There is nothing in the record which indicates that the weapons testimony was dispositive or that suppression would have changed the outcome of the Petitioner's case.

Answer (Doc. 11), Exh. "E" at 6; In Chambers Ruling, Re: Petition for Post-Conviction Relief 8/3/2010 (Doc. 1-4) at 6. The court of appeals agreed that Petitioner had failed to meet his "burden to show counsel's deficient performance prejudiced him—'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Ariz. Ct. App. Mem. Decision 2/8/2011 (Doc. 1-4) at 35–36 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

Based on the foregoing, this Court finds that the Arizona courts did not unreasonably apply clearly established Federal law or unreasonably determine the facts in light of the evidence presented. Therefore, Petitioner cannot meet his burden to show prejudice. *See Gulbrandson*, 738 F.3d at 991. Regarding Plaintiff's claim that Sgt. James found the weapons, there is no evidence, beyond Plaintiff's bald assertion, before the Court regarding this claim. Furthermore, and as the Rule 32 court noted, irrespective of where the weapons were found, "Petitioner's claim that the weapons testimony affected the outcome of his case is speculative." Answer (Doc. 11), Exh. "E" at 6; In Chambers Ruling, Re: Petition for Post-Conviction Relief 8/3/2010 (Doc. 1-4) at 6. "Newly discovered evidence is a ground for habeas relief only when it bears on the constitutionality of an appellant's conviction and would probably produce an acquittal." *Spivey v. Rocha*, 194 F.3d 971, 979 (9th Cir. 1999) (citations omitted). Petitioner cannot meet his burden, and his ineffective assistance of counsel claim regarding counsel's

alleged failure to seek additional disclosure regarding the location of the guns and pretrial investigation into the same must fail.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

### B. Grounds Three, Four, and Five:  **Brady** *Material*

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).   The Supreme Court of the United States has subsequently held that "the duty to disclose such evidence is applicable even though there has been no request by the accused[.]"  *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (citing *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49, L.Ed.2d 342 (1976)).  As such, "[d]ue process imposes an 'inescapable' duty on the prosecutor 'to disclose known, favorable evidence rising to a material level of importance.'"  *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013) (quoting *Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

A *Brady* violation results if "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Strickler*, 527 U.S. at 281, 119 S.Ct. at 1948.  Such a violation has three elements: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued."  *Id.*

**1.  Ground Three: Alleged Failure to Disclose Pima County Sheriff's Office Transcription of Petitioner Interview**

Petitioner alleges that "[t]he State failed to disclose 'Brady' evidence (23) pages of Mr. Thompson's statement in possession of Pima County Sheriff's Office and investigative agencies which the State had access to . . . [in violation of ] petitioners [sic] right to Due Process of the Law[.]"  Petition (Doc. 1) at 8.  Petitioner further describes the timeline of transcription of his interview with police by the Pima County Public Defender's Office and the Pima County Sheriff's Office, and details the discrepancies between the two transcripts.  *Id.*; Pet.'s Addendum (Doc. 1-3) at 2–56; Pro Se Suppl. Br. Under 28 U.S.C. § 2254 (Doc. 1-6) at 1–19.

The Rule 32 court found "Petitioner's argument is severely flawed."  In Chambers Ruling, Re: Petition for Post-Conviction Relief 1/4/2012 (Doc. 1-5) at 25.  Upon review, the court of appeals noted that "there was only one recording of Thompson's statements to law enforcement officers; there were, however, two transcriptions, one prepared by the Pima County Sheriff's office, which seems to have become the transcript used by the Pima County Attorney's office (the state's transcript"), and the other by the Pima County Public Defender's office, which differed in nonmaterial ways."  Ariz. Ct. App. Mem. Decision 5/30/2012 (Doc. 1-5) at 77–78.  Both the Rule 32 court and the court of appeals recognized that "only the audio recording of the statements was played for the jury; the redacted version of the state's transcript was used during testimony but was not admitted into evidence."  *Id.* at 78.  Moreover, "the transcript Thompson claimed the state had failed to disclose to him was actually the transcript prepared by the Public Defender's

office[,] . . . [and] with respect to the redaction of portions of Thompson's recorded statements, the prosecutor explained to the court during a bench conference on the second day of trial that Thompson did not want the jury to hear anything about his having held individuals suspected of being undocumented immigrants at gunpoint on his property." *Id.* Additionally, both Detectives Hess and Copeland, who were involved in Petitioner's interview, testified at trial regarding what occurred when the recorder had been stopped, as well as to the accuracy of the State's transcription. *Id.* at 79. The court of appeals adopted the Rule 32 court's determination that transcript's "continued absence from trial would not have altered the verdict." *Id.*; In Chambers Ruling, Re: Petition for Post-Conviction Relief 1/4/2012 (Doc. 1-5) at 26. The Rule 32 court, however, considered this claim under Arizona law regarding newly-discovered evidence, but did not directly address any alleged *Brady* violation. In such a situation, this Court is "not required to defer to the state court's decision because the issue involves an alleged violation of the federal Constitution." *Brown v. Anderson*, 164 F.3d 629 (9th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

In order for a *Brady* violation to occur, "[t]he evidence at issue must be favorable to the accused[.]" *Strickler*, 527 U.S. at 281, 119 S.Ct. at 1948. Favorable evidence is defined as "[a]ny evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes." *Milke*, 711 F.3d at 1011 (citing *Strickler*, 527 U.S. at 290, 119 S.Ct. 1936). As an initial matter, contrary to Petitioner's assertions, the transcript was not favorable to him. It contained the entirety of his confession to police. Furthermore, the transcript was produced by his counsel's office. Trial counsel received

the recordings of Petitioner's interview with police, and were able to create a transcription from the same. As such, the State did not fail to turn over evidence, and even if there was a failure, the material was not favorable to the defense. Accordingly, no *Brady* violation occurred, and Petitioner's habeas claim regarding the same must fail.

## 2.   Count Four:  State's Alleged Failure to Disclose Evidence

Petitioner alleges that "[t]he State failed to disclose evidence favorable to the accused as defense requested disclosure under Rule 15.1 & 15.1(b) . . . [in violation of] petitioner's Rights to Due Process of the Law[.]" Petition (Doc. 1) at 9. Petitioner again cites *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and discusses the differences between the two transcripts. *Id.* Respondents assert that this "claim is unexhausted because it was not made in the state court." Answer (Doc. 11) at 6. As such, Respondents argue that it is procedurally defaulted. *Id.* Contrary to Respondents' position, however, Petitioner asserted this claim in his second PCR petition, and on appeal of the same. *See* Answer (Doc. 11), Not. of PCR 10/27/2011 (Exh. "O") at 4–23; *see also* Pet. for Review (Doc. 1-5) at 40–64. Petitioner intermingled this claim with his *Brady* claim and others. The Court finds that Petitioner did sufficiently raise this claim to the State court, and as discussed in Section IV.B.1., *supra*, the Arizona courts denied relief. Therefore, the Court finds Ground 4 is exhausted. The Court further finds that because "the relevant state court decision . . . fairly appear[s] to [be] . . . interwoven with [federal] law" it may properly address this ground for relief. *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991). Therefore, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68 (citations omitted). Petitioner appears to be relying on Rules 15.1(b) and 16, Arizona Rules of Criminal Procedure, in part to support his *Brady* claim. Not. of PCR 10/27/2011 (Doc. 1-4) at 64–67. As discussed in Section IV.B.1., *supra*, Petitioner cannot meet the elements of a *Brady* violation. The addition of the State disclosure rules does nothing change this analysis. Therefore, the Court finds that Petitioner's Ground 4 is denied.

### 3.  Count Five:  False Evidence

Petitioner alleges that "[f]alse evidence [was] used to convict [him] . . . [in violation of his] right to a fair trial, [and] right to due process of the law." Petition (Doc. 1) at 10. Respondents claim that this "claim is unexhausted because it was not made in state court[.]" Answer (Doc. 11) at 6. The Court finds Respondents assertion incorrect. Petitioner raised this identical claim in his second PCR petition, stating that "False Evidence [was] used to convict[.]" Not. PCR 10/27/2011 (Doc. 1-4) at 68. As in the instant habeas petition, Petitioner cited *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 660 (1967), in support of this argument. *Id.* This argument was also contained, albeit obliquely, within Petitioner's appeal of his second PCR petition. Pet. for Review 2/2/2012 (Doc. 1-5) at 40–64. Accordingly, the Court finds Count Five exhausted.

"[T]he transcript Thompson claimed the state had failed to disclose to him was

actually the transcript prepared by the Public Defender's office[,] . . . [and] with respect to the redaction of portions of Thompson's recorded statements, the prosecutor explained to the court during a bench conference on the second day of trial that Thompson did not want the jury to hear anything about his having held individuals suspected of being undocumented immigrants at gunpoint on his property."  Ariz. Ct. App. Mem. Decision 5/30/2012 (Doc. 1-5) at 77–78.  Additionally, both Detectives Hess and Copeland, who were involved in Petitioner's interview, testified at trial regarding what occurred when the recorder had been stopped, as well as to the accuracy of the State's transcription.  *Id.* at 79.

The Supreme Court of the United States has observed that "[a] state-court decision is 'contrary to' our clearly established precedents if it 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (citations omitted).  The Court went on to note that "[a]voiding these pitfalls does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id.* (emphasis in original).

Petitioner's reliance on *Miller* is misplaced, however.   In that case "[t]he prosecution deliberately misrepresented the truth."  *Miller*, 386 U.S. at 6, 87 S.Ct. at 788. The Arizona courts found that the two transcripts were not materially different, were not admitted into evidence, and the CD containing the recording of Petitioner's interview

- 40 -

with police was played for the jury.   In Chambers Ruling, Re: Petition for Post-Conviction Relief 1/4/2012 (Doc. 1-5) at 25–26; Ariz. Ct. App. Mem. Decision 5/30/2012 (Doc. 1-5) at 77–79.   Accordingly, the state courts denied Petitioner's PCR petition.   In Chambers Ruling, Re: Petition for Post-Conviction Relief 1/4/2012 (Doc. 1-5) at 27; Ariz. Ct. App. Mem. Decision 5/30/2012 (Doc. 1-5) at 80.   The Court finds that this determination is neither "contrary to" or an "unreasonable application of" clearly established Federal law, nor "based on an unreasonable determination of the facts[.]"   28 U.S.C. § 2254(d).   Accordingly, Petitioner's claim is denied.

### C. Ground Six:  Alleged State Court Errors

Petitioner alleges that "State Court Errors Denied Defendant a Fair Trial as defendants conviction resulted from state court errors."   Petition (Doc. 1) at 11 (grammatical errors in original).   Respondents assert that this "claim is unexhausted because it was not made in state court."   Answer (Doc. 11) at 7.   Petitioner lists several alleged "errors," some of which he alleged in the Arizona courts, others that he did not. The Court will address each of these in turn.

### 1.  Fraud, False Statements, and Perjury

Petitioner cites to Sections 1001, 1621, and 1622, Title 18 of the United States Code alleging the State courts erred under these statutes.   Petition (Doc. 1) at 11. Petitioner asserts this claim in his Second PCR Petition.   Not. of PCR 10/27/2011 (Doc. 1-4) at 68–69, 75.   Petitioner did not address this claim to the Arizona Court of Appeals, however.   See Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each

- 41 -

appropriate state court").   As such, the claim is unexhausted, and would now be precluded.   Ariz. R. Crim. P. 32.2(a)(3).   Therefore, Petitioner's claim is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred")*.*   Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.   *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).   Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").

The Court notes that even if it were to excuse Petitioner's procedural default, these sections of the United States Code are criminal statutes, and "[s]uch sections in no respect provide affirmative relief of the nature requested[.]" *Peabody v. United States*,

394 F.2d 175, 177 (9th Cir. 1968) (state prisoner seeking a 28 U.S.C. § 2255 vacation of sentence is not entitled to relief pursuant 18 U.S.C. §§ 241, 242); *see also Cok v. Consentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Generally, a private citizen has no authority to initiate a federal criminal prosecution. . . . Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242[.]" *Id.* (citations omitted)).  Petitioner is not entitled to habeas relief.

## 2.  Theft or Alteration of Record

Petitioner cites to Sections 1506, Title 18 of the United States Code alleging the State courts erred under this statute.  Petition (Doc. 1) at 11.  Petitioner asserts this claim in his Second PCR Petition.  Not. of PCR 10/27/2011 (Doc. 1-4) at 68–69, 75–76.  Petitioner did not address this claim to the Arizona Court of Appeals, however.  *See Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court").  As such, the claim is unexhausted, and would now be precluded.  Ariz. R. Crim. P. 32.2(a)(3).  Therefore, Petitioner's claim is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise

claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").

The Court notes that even if it were to excuse Petitioner's procedural default, this section of the United States Code is also a criminal statute, and "[s]uch sections in no respect provide affirmative relief of the nature requested[.]" *Peabody v. United States*, 394 F.2d 175, 177 (9th Cir. 1968) (state prisoner seeking a 28 U.S.C. § 2255 vacation of sentence is not entitled to relief pursuant 18 U.S.C. §§ 241, 242); *see also Cok v. Consentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Generally, a private citizen has no authority to initiate a federal criminal prosecution. . . . Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242[.]" *Id.* (citations omitted)).  As such, Petitioner is not entitled to habeas relief.

### 3.  Federal Rules of Evidence

Petitioner cites to the Federal Rules of Evidence to support his claim that he was denied a fair trial.  Petition (Doc. 1) at 11.  Petitioner pointed to these same rules in his

1   Second PCR petition, and appeal from denial of the same.  Not. of PCR 10/27/2011 (Doc.

2   1-4) at 69–71; Pet. for Review 2/2/2012 (Doc. 1-5) at 61.  The Court finds that this claim

3   is exhausted.  The Court further finds that Petitioner is not entitled to relief, because the

4   Federal Rules of Evidence do not apply in state court proceedings. *See United States v.*

5   *Chase*, 340 F.3d 978, 985 (9th Cir. 2003) ("The Federal Rules of Evidence apply only to

6   proceedings in federal court.").  Therefore, Petitioner's claim is denied.

7

8                          **4.   Federal Rules of Criminal Procedure**

9           Petitioner cites to the Federal Rules of Criminal Procedure to support his claim

10  that he was denied a fair trial.  Petition (Doc. 1) at 11.  Petitioner pointed to these same

11  rules in his Second PCR petition.  Not. of PCR 10/27/2011 (Doc. 1-4) at 68–69, 72–73.

12  Petitioner did not address this claim to the Arizona Court of Appeals, however.  *See*

13  *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order

14  to "fairly present" one's claims, the prisoner must do so "in each appropriate state

15  court").  As such, the claim is unexhausted, and would now be precluded.  Ariz. R. Crim.

16  P. 32.2(a)(3).   Therefore, Petitioner's claim is procedurally defaulted.   *Coleman v.*

17  *Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991)

18  ("petitioner failed to exhaust state remedies and the court to which the petitioner would

19  be required to present his claims in order to meet the exhaustion requirement would now

20  find the claims procedurally barred").   Where a habeas petitioner's claims have been

21  procedurally defaulted, the federal courts are prohibited from subsequent review unless

22  the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S.

23  288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise

claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).   Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").

The Court notes that even if it were to excuse Petitioner's procedural default, Petitioner is not entitled to relief, because the Federal Rules of Criminal Procedure do not apply in state court proceedings. Fed. R. Crim. P. 1 ("These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States."); *see, e.g.*, *United States ex rel. Gaugler v. Brierley*, 477 F.2d 516, 523 (3d Cir. 1973) (The Federal Rules of Criminal Procedure "do not extend to prosecutions in state courts for violations of state criminal laws.").  Therefore, Petitioner's claim is denied.

### 5.  **Simultaneous Release of Transcript Portions**

Petitioner asserts that the two sections of the July 8, 2007 transcription of his interview with police were required to be disclosed at the same time.  Petition (Doc. 1) at 11.   Petitioner did not present this claim to the State court, and it would now be

precluded.  Ariz. R. Crim. P. 32.2(a)(3).  As such, Petitioner's claim regarding an alleged

right to simultaneous disclosure of the transcript is unexhausted, and as a result,

procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546,

2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the

court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred").  Where a

habeas petitioner's claims have been procedurally defaulted, the federal courts are

prohibited from subsequent review unless the petitioner can show cause and actual

prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103

L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding

barred federal habeas review unless petitioner demonstrated cause and prejudice).

Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v.*

*Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner

"must show not merely that the errors . . . created a *possibility* of prejudice, but that they

worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also*

*Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer

any cause "for procedurally defaulting his claims[,] . . . [ and as such] there is no basis on

which to address the merits of his claims").  Therefore, Petitioner's claim is denied.

## 6.  Redaction and Sealing of Transcript

Petitioner asserts that "the Court was supposed to do the redaction and seal the

entire statement."  Petition (Doc. 1) at 11.  Petitioner did not present this claim to the

State court, and it would now be precluded.  Ariz. R. Crim. P. 32.2(a)(3).  As such, Petitioner's claim regarding an alleged right to redaction and sealing of the transcript is unexhausted, and as a result, procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [ and as such] there is no basis on which to address the merits of his claims").  Therefore, Petitioner's claim is denied.

## 7.  Contemporaneous Consideration

Petitioner asserts that "any part of the statement should be considered

contemporaneously with it." Petition (Doc. 1) at 11. Petitioner did not present this claim to the State court, and it would now be precluded. Ariz. R. Crim. P. 32.2(a)(3). As such, Petitioner's claim regarding an alleged right to contemporaneous consideration of his entire statement is unexhausted, and as a result, procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"). Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice). Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [ and as such] there is no basis on which to address the merits of his claims").

To the extent that this claim can be construed as contained within Petitioner's

general argument against the use of the redacted transcript, as presented in his second PCR petition, and appeal therefrom, such a claim must fail.  The Arizona courts found that the two transcripts were not materially different, were not admitted into evidence, and the CD containing the recording of Petitioner's interview with police was played for the jury.  In Chambers Ruling, Re: Petition for Post-Conviction Relief 1/4/2012 (Doc. 1-5) at 25–26; Ariz. Ct. App. Mem. Decision 5/30/2012 (Doc. 1-5) at 77–79.  Accordingly, the state courts denied Petitioner's PCR petition.  In Chambers Ruling, Re: Petition for Post-Conviction Relief 1/4/2012 (Doc. 1-5) at 27; Ariz. Ct. App. Mem. Decision 5/30/2012 (Doc. 1-5) at 80.  The Court finds that this determination is neither "contrary to" or an "unreasonable application of" clearly established Federal law, nor "based on an unreasonable determination of the facts[.]"  28 U.S.C. § 2254(d).  Therefore, Petitioner's claim is denied.

### 8.  Release of Exhibits 139, 140, and 141

Petitioner asserts that Exhibits 139, 140 and 141 were never released to him.  Petition (Doc. 1) at 11.  This issue was never raised in an appellate or collateral proceeding before the state courts, and it would now be precluded.  Ariz. R. Crim. P. 32.2(a)(3).  As such, Petitioner's claim regarding an alleged right to the release of certain exhibits is unexhausted, and as a result, procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  Where a habeas petitioner's claims have been procedurally

defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).   Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [ and as such] there is no basis on which to address the merits of his claims").   Therefore, Petitioner's claim is denied.

### 9.   Spoliation

Petitioner asserts that spoliation of records occurred, depriving him of a fair trial. Petition (Doc. 1) at 11.   Although Petitioner raised this issue in his second PCR petition, he failed to raise it in the appeal of the same.   Not. of PCR 10/27/2011 (Doc. 1-4) at 71. As such, the claim is unexhausted, and would now be precluded.   Ariz. R. Crim. P. 32.2(a)(3); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court").   Therefore, Petitioner's claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d

640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"). Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice). Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Petitioner's claim is denied.

## 10. Fraudulent Concealment

Petitioner alleges that he meets "all (5) criteria of fraudulent concealment. Petition (Doc. 1) at 11. Although Petitioner raised this issue in his second PCR petition, he failed to raise it in the appeal of the same. Not. of PCR 10/27/2011 (Doc. 1-4) at 71–72. As such, the claim is unexhausted, and would now be precluded. Ariz. R. Crim. P. 32.2(a)(3); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158

L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court"). Therefore, Petitioner's claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"). Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice). Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Petitioner's claim is denied.

## 11. General Reference to Postconviction Relief Petition

Petitioner generally refers to his second PCR petition in support of his claim for the alleged denial of a fair trial. Petition (Doc. 1) at 11. "Judges are not like pigs,

hunting for truffles buried in briefs." *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) (citations omitted).  This Court has carefully considered each of Petitioner's stated claims, and declines his apparent invitation to search for those which he may have missed.

### D. Ground Seven:   Right to Reciprocal Discovery

Petitioner asserts that "[t]he State denied the defense the right to reciprocal discovery . . . [in violation of] the petitioners [sic] right to due process of the law[.]" Petition (Doc. 1).  Respondents assert that this "claim is unexhausted because it was not made in state court."  Answer (Doc. 11) at 7.  The Court agrees.  Although Petitioner raised this issue in his second PCR petition, he failed to raise it in the appeal of the same. Not. of PCR 10/27/2011 (Doc. 1-4) at 74–77.    As such, the claim is unexhausted, and would now be precluded.  Ariz. R. Crim. P. 32.2(a)(3); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court").    Therefore, Petitioner's claim is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate

proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice). Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Petitioner's claim is denied.

### E.  Outside Influences on the Jury

Petitioner alleges that "[o]utside influences upon the jury raise the presumption of prejudice that imposes a heavy burden on the state to overcome by showing that these influences were harmless to the petitioner." Petition (Doc. 1) at 13. Respondents assert that this "claim is unexhausted because it was not made in state court." Answer (Doc. 11) at 7. The Court agrees. Although Petitioner raised this issue in his second PCR petition, he failed to raise it in the appeal of the same. Not. of PCR 10/27/2011 (Doc. 1-4) at 78–80. As such, the claim is unexhausted, and would now be precluded. Ariz. R. Crim. P. 32.2(a)(3); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court"). Therefore, Petitioner's claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d

640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").   Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.   *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).   Petitioner has not met his burden to show either cause or actual prejudice.   *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").   Petitioner's claim is denied.

### F. Conclusion

In light of the foregoing, the Court finds that Petitioner's habeas claims are without merit, and the Petition (Doc. 1) shall be denied.

## V.   RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the

District Judge enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1);

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.   A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).   No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number:  **CV-12-0766-TUC-DCB**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.   The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 31st day of July, 2015.

Honorable Bruce G. Macdonald
United States Magistrate Judge