# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Lyndall Dwaine Thompson, )<br><br>Petitioner, )<br><br>v. )<br><br>Charles L. Ryan, et al., )<br><br>Respondents. )<br>_____ ) | CV-12-00766-TUC-DCB<br><br><br>**ORDER** |

This matter was referred to Magistrate Judge Bruce G. Macdonald, pursuant to the Rules of Practice for the United States District Court, District of Arizona (Local Rules), Rule (Civil) 72.1(a). On July 31, 2015, he issued a Report and Recommendation (R&R), recommending that the Court dismiss the Petition for Writ of Habeas Corpus.

On April 11, 2008, a jury found Petitioner, Lyndall Dwaine Thompson, guilty of second degree murder for shooting and killing his brother. On July 14, 2008, Petitioner was sentenced to the presumptive term of sixteen years imprisonment.

After the shooting, Petitioner called police and claimed the shooting was in self-defense. Prior to being interviewed by police, he was *Mirandized* and

agreed to waive his *Miranda* rights, act as his own attorney, and answer police officer's questions if they would answer his questions.  Thereafter, he made incriminating statements.  During the interview, police responded to his inquiries regarding his brother's condition by acting like they didn't know it, but they knew his brother was dead.  His trial attorney did not seek to suppress the interview and a redacted recording of the interview was presented to the jury.  Petitioner asserts that he did not see a copy of the un-redacted recording until after the trial, and Petitioner argues that there were differences in the redacted tape recording played to the jury which were so substantial as to amount to a presentation of false evidence.

Petitioner's claim of self-defense was that he had thrown his hand gun on the ground and believed his brother picked it up and was armed, and after he shot his brother he also threw his SKS automatic rifle on the ground and ran away.  The testimony and statements from police were that they found both weapons on the top of a vehicle parked in his carport.  There was some confusion over whether the guns were put there by the defendant or moved there by police because none of the investigating officers were responsible for initially locating the gun, and the Government in closing admitted: "we would like to know how the guns got there." (Response (Doc. 11-3(A): TR at122.)  Petitioner argues his counsel should have investigated and discovered which officer actually found the guns and where the

guns were found because proof that the guns were found on the ground would have supported his assertion of self-defense. Whereas, the guns being found together on top of the vehicle totally undermined his self-defense claim.

On habeas, Petitioner raises eight (8) grounds for relief. First, Petitioner alleges ineffective assistance of trial counsel due to an alleged failure to move to suppress incriminating statements, which he asserts were unconstitutionally obtained by police. Second, Petitioner alleges ineffective assistance of trial counsel based on an alleged failure to move for additional disclosure and/or failure to investigate who found his weapons and where the guns were located when found. The remainder of Petitioner's claims relate to his assertion that the State used false evidence against him because it introduced a redacted recording of his confession, which materially misrepresented his statements to the jury. Petitioner asserts that an evidentiary hearing is required. (Objection (Doc. 34) at 3 (citing *Doody v Ryan*, 649 F.3d 986, 1021 (9th Cir. 2011); *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

## STANDARD OF REVIEW

The duties of the district court in connection with an R&R by a Magistrate Judge are set forth in Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P.

72(b); 28 U.S.C. § 636(b)(1). Where the parties object to an R&R, "'[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made.'" *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) (quoting 28 U.S.C. § 636(b)(1)).

This Court's ruling is a *de novo* determination as to those portions of the R&R to which there are objections. 28 U.S.C. § 636(b)(1)(C); *Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir.2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir.2003) (*en banc*). To the extent that no objection has been made, arguments to the contrary have been waived. Fed. R. Civ. P. 72; *see* 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the R&R), *McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to Magistrate's report waives right to do so on appeal); *see also* Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation)).

The parties were sent copies of the R&R and instructed that, pursuant to 28 U.S.C. § 636(b)(1), they had 14 days to file written objections. *See also*, Fed. R. Civ. P. 72 (party objecting to the recommended disposition has fourteen (14) days to file specific, written objections). The Court has considered the objections made

4

by the Petitioner, and the parties' briefs considered by the Magistrate Judge in deciding the Petition for Writ of Habeas Corpus.

## OBJECTIONS

Evidentiary Hearing

In Petitioner's Objection to the R&R, he charges that the Magistrate Judge erred in failing to order an evidentiary hearing to determine Petitioner's ineffective assistance of counsel claims one and two and his false evidence claim five. "Specific issues on which an evidentiary hearing is required in this case to resolve disputed factual claims include, although are not necessarily limited to: (1) whether Petitioner's counsel performed deficiently in failing to move to suppress Petitioner's custodial statements to police; (2) whether Petitioner's counsel acted unreasonably in failing to further investigate and challenge the initial location of the weapons; and (3) whether Petitioner was prejudiced by these failures and omissions."  (Objection (Doc. 34) at 9.)

Petitioner argues he has established a "colorable" claim for relief on counts one and two, and five, and he was never been accorded a state evidentiary hearing on them.  He asserts that Magistrate Judge Macdonald made the same mistake. Petitioner asserts he is entitled to a hearing because he has established a colorable claim, i.e., he has alleged facts which, if true, would entitle him to relief. (Objection (Doc. 34) at 4.)  This Court must decide "whether such a hearing could

5

enable [Petitioner] to prove the petition's factual allegations." *Id.* (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

The Court denies the Petitioner's request for an evidentiary hearing because he presents no evidence to suggest he could prove the Petition's factual allegations at such a hearing.  As noted by the Magistrate Judge: "'Judges are not like pigs, hunting for truffles buried in briefs.'"  (R&R (Doc. 29) at 54 (quoting *Christian Legal Soc. Chapter of Univ. of Calif. V. Wu*, 626 F.3d 483, 488 (9th Cir. 2010)).

In respect to counsel's failure to investigate who located  the guns and where the guns were located, the record reflects that all the investigating officers believed the guns were found on the top of the vehicle parked in the carport. Petitioner now asserts that he "discovered evidence after trial that Sgt. Janes actually discovered the weapons—contrary to Janes' testimony at trial."  (Objection (Doc. 34) at 6.)  In his Objection, Petitioner complains that the Magistrate Judge found only a "bald assertion" of this newly discovered evidence, but Petitioner still does not produce the allegedly "discovered evidence."  A bald assertion will not enable the Petitioner to prove this fact at an evidentiary hearing.

In respect to counsel's failure to move to suppress his incriminating statements, the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  It is undisputed that Petitioner was given Miranda warnings prior to

making his statements to police.  His argument is that his waiver was contingent on his agreeing to answer their questions if they answered his questions.  About half way through the interview, he asked about his brother and police put him off by saying they would make inquiries and find out, but they knew his brother was dead. Petitioner argues that he intended to waive his right to have an attorney present and would act as his own attorney, and therefore, "'police were not allowed to lie or create gamesmanship.'"  (R&R (Doc. 29) at 29 (quoting Petition (Doc. 1) at 7.)  It is undisputed that the interviewing officers concealed the fact of his brother's death and used trickery during the interview.

The Court agrees with the State courts and the Magistrate Judge's conclusion that there was no Miranda violation.  "Deception is [] a permitted tactic. 'Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns.'" *Doody v. Ryan*, 649 F.3d 986, 1046 (9th Cir. 2011) (quoting *Illinois v. Perkins*, 496 U.S. 292, 297 (1990)).  "'[T]rickery is not automatically coercion. Indeed, the police commonly engage in such ruses as suggesting to a suspect that a confederate has just confessed or that police have or will secure physical evidence against the suspect.'" *Id.* (quoting *United States v. Crawford*, 372 F.3d 1048, 1061 (9th Cir. 2004) (additional citations omitted)).

7

As the Magistrate Judge clearly outlined, the alleged *quid pro quo* promise occurred at the beginning of the taped interview.  Petitioner told the investigators that he understood his rights and intended to act as his own attorney, that they could ask him anything and he would ask them anything.  If they stopped answering, he would stop answering.  They said: "ok."  The Court notes that there was no promise by either party to answer truthfully.  Prior to beginning questioning about the incident, as noted by the Magistrate Judge, the detectives expressly told Petitioner that there were no promises and if he wanted to stop talking he could stop.  Petitioner expressly told the detectives that he wanted to talk. (R&R (Doc. 29) at 30-31.)

There was no Miranda violation.  The record reflects that the statements were voluntary.  The Court agrees with the Magistrate Judge that the Arizona courts got it right under clearly established federal law, *Strickland v. Washington*, 466 U.S. 668 (1984), when they concluded that counsel was not ineffective for failing to file a motion to suppress.  (R&R (Doc. 29) at 32.)

Petitioner's false evidence claims, whether based on a due process violation, *Miller v. Pate*, 386 U.S. 1 (1967), or a discovery violation, *Brady v. Maryland*, 373 U.S. 83 (1999), fail as well.  Petitioner complains that the recording of his statements made during his interview with police was redacted by the State in a way that misrepresented facts and excluded favorable exculpatory statements.  He

8

complains that he discovered this constitutional violation after his trial. To support his false evidence claim, Petitioner submits two transcripts. "The two transcripts (the 94-page transcript made by the State and the 117-page transcript made by the Public Defender's Office) *were* materially different . . . ." (Objection (Doc. 34) at 10) (emphasis in original). There is no Brady violation and no newly discovered evidence because the 117-page transcript, which Petitioner asserts reflects the full interview, was prepared by his attorney from the original recording which the State produced to the defense. Petitioner's own statement of the facts defeats the Brady claim and any assertion of newly discovered evidence.

The Court turns to Petitioner's assertion that his constitutional right to a fair trial was violated by the presentation to the jury of the redacted recording of the interview. He gives "some glaring examples": 1) the 23 page difference; 2) omitted references to Petitioner's repeated requests about the condition of his brother and petitioner being distraught; 3) the redacted transcript changed "I don't know where the .45 is" to "I know where the .45 is," and 4) it excluded a plethora of exculpatory statements. (Objection (Doc. 34) at 11.)

The difference in total pages between the two transcripts is not evidence of a material difference. Beyond the allegedly "glaring examples," above, the Petitioner refers the Court to the State's Response, Exhibit 7 pages 34-43, Exhibit 8 pages 1-43, and Exhibit 9, which is 27 pages long. Again, Petitioner invites the

Court to rut through the record.  He does not refer the Court to where the redacted recording left out his inquiries about his brother.  The Court found the first inquiry, as noted by the State in closing arguments, was about half way through both transcripts.  (Response (Doc. 11-7) at 34: TR at 147.)  The Court did find the discrepancy between the redacted transcript's change from "I don't know where the .45 is" to "I know where the .45 is."  The Court also stumbled across another change from "In the time it takes to figure out what they've got in their hand, they're already shooting you" to "I'm already shooting him."  (Response (Doc. 11-8) at #57.)  Petitioner fails to refer the Court to exculpatory evidence that was omitted.  The Court instead found that at least one exculpatory statement, I "defended myself with lethal force," remained in the redacted transcript.  *Id.* at # 22.

As the State courts noted, the redacted transcript was not given to the jury. The jury listened to the <u>redacted</u> State-recording.  Therefore, the jurors heard what the Petitioner said, not what either of the two different transcribers heard.  Playing the recording for the jury nullified differences between the transcripts attributable to the transcripts being prepared by two different transcribers, who apparently heard the tape differently.   For example, if he said "I don't know where the .45 is," not "I know where the .45 is" – the jury would have heard the former not the latter. It would not matter what the State transcript read.

The Court agrees with the Magistrate Judge and the State courts: there was no material difference between the redacted and unredacted transcripts and for the most part differences between the transcripts were remedied by presenting the recording to the jury.  Petitioner fails to point the Court to any material omission in the redacted recording and the Court has found none.

The differences between the two transcriptions fail to support Petitioner's assertion that the State presented false evidence for a claim under *Miller*.  The Court can say with confidence that if the jury had heard the interview recording as transcribed by the Defendant, it would not have produced a different verdict.

State Courts: Unreasonable Application of Clearly Established Federal Law

For the reasons explained above, the Magistrate did not err in finding that the State courts did not unreasonably apply federal law.  The State courts' application of *Strickland* was reasonable because there was no clear argument that the Petitioner's statements were involuntary.  Likewise, Petitioner offers no clear argument that further investigation would have revealed the guns were found where he said they were found, on the ground.  His trial attorney made a reasonable strategic choice to challenge the evidence by showing that none of the testifying officers were responsible for finding the guns, which forced the State to admit in closing that it did not know how the guns got on top of the vehicle.  In large part, differences between the transcripts were nullified because the jury heard

the recording and did not rely on the State's transcript.  To the extent there were omissions in the redacted recording, the Petitioner has failed to refer the Court to any material omission that would suggest any intent by prosecutors to present false evidence.  The Court finds that the State courts got it right, and likewise, the Magistrate Judge got it right in finding the State courts reasonably applied federal law.

## CONCLUSION

After a *de novo* review of the issues raised in Petitioner's Objection, this Court agrees with the findings of fact and conclusions of law made by the Magistrate Judge in his R&R for determining the Petition for Writ of Habeas Corpus.  The Court adopts the R&R, and for the reasons stated in the R&R, the Court denies the Petition.

**Accordingly,**

**IT IS ORDERED** that the Report and Recommendation (Doc. 29) is adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is DISMISSED, and the Clerk of the Court shall enter Judgment, accordingly.

/////

/////

12

**IT IS FURTHER ORDERED** that the Petitioner's Motion for a Certificate of Appealability (Doc. 36) is GRANTED.

Dated this 11th day of January, 2016.

David C. Bury
United States District Judge

13